STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence H. ROSS, Defendant-Appellant.

Court of Appeals

*No. 95–1671–CR. Submitted on briefs February 6, 1996.—Decided June 18, 1996.*

(Also reported in 552 N.W.2d 428.)

For the defendant-appellant the cause was submitted on the briefs of *Manuel R. Galang* of Wauwatosa.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. A jury convicted Lawrence H. Ross of two counts of first-degree sexual assault of a child. He appeals from the judgment of conviction, arguing that his statements to police should have been suppressed because his five to twenty seconds of silence after he received the *Miranda* warnings invoked his right to remain silent.[1] He also challenges the trial court's admission into evidence of a treating nurse's testimony that the victim's physical condition at the time of her treatment was consistent with the victim's statement to her that her vagina had been penetrated.

We hold that the United States Supreme Court decision in *Davis v. United States,* 512 U.S. —, 114 S. Ct. 2350, 129 L.Ed.2d 362 (1994), which held that a criminal suspect must unambiguously request counsel before the police must cease questioning, also applies to a suspect's invocation of the right to remain silent. We therefore further conclude that Ross's five to twenty seconds of silence after receiving the *Miranda* warnings did not constitute an unambiguous and unequivocal invocation of the right to remain silent. Accordingly, the trial court properly refused to suppress Ross's statements to police.

Additionally, we conclude that the trial court properly exercised its discretion when it admitted the nurse's testimony into evidence. Under Wisconsin law,

---

[1] *See generally Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

it is clear that the nurse could properly testify that the victim's physical condition at the time of treatment was consistent with the victim's statement to her that her vagina had been penetrated. Because we reject Ross's arguments, the judgment of conviction is affirmed.

## I. BACKGROUND.

Police arrested Ross for having repeated sexual contact with his six-year-old niece from January to April, 1994. Police took Ross into custody, and later Detective Herman G. Kremkau questioned Ross at the Police Administration Building. Ross later challenged the admissibility of his statements to police, arguing that he had never been advised of his *Miranda* rights, and that he did not knowingly, intelligently, and voluntarily waive those rights.

According to Detective Kremkau's testimony during a pre-trial motion hearing, he first questioned Ross at the Police Administration Building about his identity and background. Detective Kremkau testified that he then advised Ross of the *Miranda* rights, telling him, *inter alia*, that he had "the constitutional right to remain silent," which Ross stated he understood. Detective Kremkau then advised Ross about the charges against him, based on the accusations of his niece and her mother, and, according to Detective Kremkau's testimony, the following occurred:

> I asked him if he had anything to say, and he just sat there looking at me.
> I advised him, I said, do you understand what I'm telling you? Do you have a reason as to why they would make these statements, if they are false, and he stated no, and I requested again if he would like to make a statement, and he just sat there looking at me.

71

> Finally, I says [sic], am I to understand that by you remaining silent that [the victim] is lying? Is this all made up? He stated no. I said is she telling the truth? He said yes.
>
> . . . .
>
> At that point he stated that he wanted to think about it for a while and there was no other statements made.

Detective Kremkau testified at the hearing that Ross's periods of silence lasted "no more than five to ten seconds." At Ross's trial, Detective Kremkau testified that the silence may have lasted fifteen to twenty seconds. Ross did not testify at the suppression hearing. The trial court did not make specific factual findings, but stated that "[f]rom the testimony and the evidence presented . . . [Ross] was properly advised of his Miranda rights . . . and thereafter . . . made what comments he chose to make. . . . [W]hatever he said . . . appears to have been done . . . freely and voluntarily." The trial court then denied the suppression motion.

Also before trial, Ross brought a *motion in limine* to exclude the testimony of a State witness, treating nurse Susan Talaska-Pikalek, because she allegedly would be testifying that the victim had been sexually assaulted. The trial court ruled that the State could ask Talaska-Pikalek "whether the observed condition of the victim was consistent with" the victim's statement at the time of her treatment.

At trial, during the State's direct examination of Talaska-Pikalek, she testified that the victim told her that Ross had touched and penetrated her genital area with his hand and penis. She then testified about her physical examination of the victim:

Q. What did you observe with respect to the hymen or to what you saw as to no hymen based upon your work in that unit and based upon your training? Would you find that consistent or inconsistent with what [the victim] had told you?

A. With — Consistent as to what you told me?

Q. Penetration to the vagina.

A. Consistent.

The jury convicted Ross of both counts of sexual assault of a child.

## II. ANALYSIS.

### A. Right to Remain Silent.

Ross argues that his statement to the police should have been suppressed because the State violated his privilege against self-incrimination when Detective Kremkau continued to question him after he allegedly invoked his right to remain silent by remaining silent. Ross is wrong.

"In *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S. Ct. 1602, 1624, 16 L.Ed.2d 694, [719] (1966), the Supreme Court fashioned a set of procedural guidelines designed to protect a suspect's rights under the Fifth Amendment from the 'inherently compelling pressures' of custodial interrogation." *State v. Harris,* 199 Wis. 2d 227, 237-38, 544 N.W.2d 545, 549 (1996). Both the suspect's right to counsel and the right to remain silent are separately protected by these procedural guidelines. *Miranda,* 384 U.S. at 467-73, 86 S. Ct. at 1624-27, 17 L.Ed.2d at 719-23.

██

A suspect's right to remain silent includes two distinct protections. The first is the right, prior to

questioning, " 'to remain silent unless [the suspect] chooses to speak in the unfettered exercise of his own will.' " *Id.* at 460, 86 S. Ct. at 1620, L.Ed.2d at 715 (citation omitted). The second is the " 'right to cut off questioning.' " *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S. Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975) (citation omitted). "Through the exercise of [a suspect's] option to terminate questioning he [or she] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." *Id.* at 103-04, 96 S. Ct. at 326, 46 L.Ed.2d at 321. Hence, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his [or her] 'right to cut off questioning' was 'scrupulously honored.' " *Id.* at 104, 96 S. Ct. at 326, 46 L.Ed.2d at 321 (citation omitted).

The key question thus becomes whether the suspect, after being informed of the *Miranda* rights, invokes any of those rights during police questioning. Once the right to remain silent or right to counsel is invoked, all police questioning must cease—unless the suspect later validly waives that right and "initiates further communication" with the police. *Miranda*, 384 U.S. at 473-74, 86 S. Ct. at 1627, 46 L.Ed.2d at 723; *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1884-85, 68 L.2d.2d 378, 386 (1981).

In *Davis*, the Supreme Court declared that in order for a suspect to invoke the right to counsel, "the suspect must unambiguously request counsel." *Davis*, 512 U.S. at —, 114 S. Ct. at 2355, 129 L.Ed.2d at 371. Hence, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right

to counsel, our precedents do not require the cessation of questioning." *Id.*

Wisconsin courts have merged the *Davis* "clear articulation rule" into Wisconsin jurisprudence with respect to a suspect's invocation of the right to counsel. *See State v. Coerper,* 199 Wis. 2d 216, 223, 544 N.W.2d 423, 426 (1996).[2] Yet no court in this state has spoken on whether the rule also applies to a suspect's invocation of the right to remain silent. Thus, we are presented with an issue of first impression.[3]

Following the nearly unanimous lead of other jurisdictions that have addressed this issue, we hold that the *Davis* "clear articulation rule" also applies to a suspect's invocation of the right to remain silent.[4] We

---

[2] *See also State v. Jones,* 192 Wis. 2d 78, 110-11, 532 N.W.2d 79, 92 (1995) (Abrahamson, J., dissenting) (stating prior Wisconsin case law "has been superseded" by *Davis v. United States,* 512 U.S. —, 114 S. Ct. 2350, 129 L.Ed.2d 362 (1994)); *State v. Long,* 190 Wis. 2d 386, 394-97 & n.1, 526 N.W.2d 826, 829-30 & n.1 (Ct. App. 1994) (applying *Davis* and concluding prior Wisconsin case law no longer in accord with subsequent decisions of United States Supreme Court).

[3] In *State v. Goetsch,* 186 Wis. 2d 1, 8 n.2, 519 N.W.2d 634, 637 n.2 (Ct. App.), *cert. denied,* 115 S. Ct. 531 (1994), a different panel of this court declined to address this issue: "We need not decide whether, upon an equivocal assertion of a suspect's right to silence, interrogation must cease."

[4] A cursory review shows that most states that have addressed the issue have applied the *Davis* "clear articulation rule" to the right to remain silent. *See Bowen v. State,* 911 S.W.2d 555, 565 (Ark. 1995) (applying *Davis* to right to remain silent: "We see no distinction between the right to counsel and the right to remain silent with respect to the manner in which it must be effected."), *cert. denied,* 116 S. Ct. 1861 (1996); *State v. Williams,* 535 N.W.2d 277, 285 (Minn. 1995) (stating: "Because

adopt this rule, acknowledging that "[t]he Supreme Court's concern in *Davis* was to craft 'a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information.' " *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir. 1994) (quoting *Davis,* 512 U.S. at —, 114 S. Ct. at 2352, 129 L.Ed.2d at 372), *cert. denied,* 115 S. Ct. 1801 (1995). This concern is equally cogent with respect to a suspect's invocation of the right to remain silent.

As other courts have noted, however, there is a practical difference between invoking the right to counsel and invoking the right to silence. Unambiguously

---

the Supreme Court has held that the Constitution does not require police officers to confine their questioning to clarifying questions when an accused ambiguously or equivocally attempts to invoke his right to counsel, it follows by even greater logic that the Constitution does not require such a clarifying approach when an accused ambiguously or equivocally attempts to invoke his right to remain silent." (Citation omitted.)); *State v. Bacon,* 658 A.2d 54, 65 (Vt.) (declaring "[w]ithout doubt, [ *Davis*] applies equally to situations in which a defendant who has waived his *Miranda* rights ambiguously invokes the right to remain silent"), *cert. denied,* 116 S. Ct. 117 (1995); *cf. State v. Farley,* 452 S.E.2d 50, 59 & n.12 (W. Va. 1994) (applying *Davis* rule without adopting it into state law).

Federal courts have also followed suit. *See United States v. Banks,* 78 F.3d 1190, 1197-98 (7th Cir. 1996) (applying *Davis* to right to remain silent); *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir. 1994) (declaring "same rule should apply to a suspect's ambiguous or equivocal references to right to cut off questioning as the right to counsel"), *cert. denied,* 115 S. Ct. 1801 (1995); *United States v. Andrade,* 925 F. Supp. 71, 78-81 (D. Mass. 1996) (applying *Davis* to right to remain silent); *Evans v. Demosthenes,* 902 F. Supp. 1253, 1259 (D. Nev. 1995) (concluding *Davis* rule now applies to right to remain silent).

invoking the right to counsel can generally only be accomplished through a suspect's oral or written declaration. "It is difficult to imagine what *behavior* a defendant could use to clearly convey the desire to speak with counsel. In contrast, a suspect can attempt to convey a desire to remain silent in various ways that do not necessarily require that words be used at all." *State v. Williams,* 535 N.W.2d 277, 283 (Minn. 1995) (emphasis added). Indeed, a suspect could theoretically attempt to invoke his or her right to silence by remaining stone silent in the face of police questioning. *Cf. United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir. 1988) (discussing pre-*Davis* suspect who in the face of questioning "maintained her silence for . . . as many as ten minutes"); *United States v. Andrade,* 925 F. Supp. 71, 80 (D. Mass. 1996) (discussing suspect who remained silent but "became agitated and gave [the officers] a dismissive gesture").

A suspect's silence during questioning raises many troubling problems for an investigating officer: "How should the police interpret, for example, a momentary hesitation or a reflective pause? When is the length of silence sufficient to indicate that the suspect intends to stand on his right to remain silent?" *Andrade,* 925 F. Supp. at 80. Hence, as other courts have stated: "Making these difficult judgments under the dynamic conditions of a police investigation is the kind of burden that the bright line of the clear articulation rule was designed to ease." *Id.*

 Given our concern for crafting a bright line that will prevent "judicial second-guessing of police officers as to the meaning of a suspect's actions" or behaviors, *Williams,* 535 N.W.2d at 283, we conclude that a suspect's silence, standing alone, is insufficient to

unambiguously invoke the right to remain silent. A suspect must, by either an oral or written assertion or non-verbal conduct that is intended by the suspect as an assertion and is reasonably perceived by the police as such, inform the police that he or she wishes to remain silent.[5] Similar to an invocation of the right to counsel, " 'a suspect need not speak with the discrimination of an Oxford don,' " but must articulate his or her desire to remain silent or cut off questioning "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be" an invocation of the right to remain silent. *Davis,* 512 U.S. at —, 114 S. Ct. at 2355, 129 L.Ed.2d at 371 (citation omitted). If the suspect does not unambiguously invoke his or her right to remain silent, the police need not cease their questioning of the suspect.

Further, given an equivocal or ambiguous request to remain silent, the police need not ask the suspect clarifying questions on that request. *See id.* at —, 114 S. Ct. at 2356, 129 L.Ed.2d at 373. While such a procedure "will often be good police practice," the Constitution does not require the police to always ask such clarifying questions. *See id.* Indeed, "the Federal Constitution does not prohibit everything that is . . . undesirable." *Bennis v. Michigan,* 116 S. Ct. 994, 1001-02, 134 L.Ed.2d 68, 80 (1996) (Thomas, J., concurring).

We are convinced that a bright line distinction protects a suspect's Fifth Amendment privilege against self-incrimination, without unduly hampering the "need for effective law enforcement." *Davis,* 512 U.S. at —, 114 S. Ct. at 2356, 129 L.Ed.2d at 372. As such, we

[5] *Cf.* RULE 908.01(1), STATS. (defining "statement" as applicable to hearsay rules).

now apply the "clear articulation rule" to the facts before us.

When reviewing a *Miranda* challenge, we are bound by the trial court's findings of historical fact unless they are "clearly erroneous"; however, whether the defendant's *Miranda* rights were violated is a "constitutional fact" that we review *de novo. Coerper,* 199 Wis. 2d at 221-22, 544 N.W.2d at 425.

In this case, the trial court did not make specific factual findings about what occurred during Ross's police questioning. Ross, however, does not dispute Detective Kremkau's version of events; accordingly, we apply these undisputed facts to the standards enunciated above.

Ross argues that his silence in the face of Detective Kremkau's questioning was sufficient to invoke his right to remain silent. Clearly, however, Ross did not unambiguously invoke his right to remain silent; he never said anything. Thus, the police were free to continue questioning him, and his subsequent inculpatory statements were not procured in violation of his Fifth Amendment privilege against self-incrimination.[6] The trial court correctly denied Ross's suppression motion.

### B. Admission of Nurse's Opinion.

Ross next argues that the trial court erroneously exercised its discretion when it admitted into evidence nurse Talaska-Pikalek's testimony that the victim's physical condition at the time of her treatment was

---

[6] We do note that after Ross made the inculpatory statement, he indicated that "he wanted to think about it for a while"; the police ceased questioning him.

consistent with the victim's statement to her that her vagina had been penetrated. Ross argues that the nurse's testimony on this issue was impermissible opinion testimony that was "unfairly and prejudicially" influential on the jury. We disagree.

"A trial court possesses great discretion in determining whether to admit or exclude evidence. We will reverse such a determination only if the trial court erroneously exercises its discretion." *State v. Morgan,* 195 Wis. 2d 388, 416, 536 N.W.2d 425, 435 (Ct. App. 1995). If the trial court applies the relevant law to the applicable facts and reaches a reasoned conclusion, the trial court has properly exercised its discretion. *Id.*

"Expert testimony is admissible only if it is relevant." *State v. Pittman,* 174 Wis. 2d 255, 267, 496 N.W.2d 74, 79, *cert. denied,* 114 S. Ct. 137 (1993). Further, under RULE 907.02, STATS., an expert witness may testify in the form of an opinion, if the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *See* RULE 907.02, STATS.[7] Both the trial court's determination of whether expert evidence is relevant and whether the evidence will assist the trier of fact are discretionary decisions. *Morgan,* 195 Wis. 2d at 417, 536 N.W.2d at 435.

---

[7] RULE 907.02, STATS., provides:

**Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984). This is so because "[t]he credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion." *Id.*

Ross argued in his *motion in limine* that Talaska-Pikalek's proposed testimony was prohibited by *Haseltine* and *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988), because the testimony would be an impermissible opinion that the victim was telling the truth about the alleged assault. Ross is wrong.

In *Haseltine,* we held that an expert witness could not give his opinion that "there 'was no doubt whatsoever' that [the victim] was an incest victim." *Haseltine,* 120 Wis. 2d at 95-96, 352 N.W.2d at 675-76. In *Jensen,* the supreme court held that expert opinion testimony comparing post-sexual assault behavior of child victims with the actual victim's behavior, was admissible as long as the expert did not "convey to the jury his or her own beliefs as to the veracity" of the victim. *Jensen,* 147 Wis. 2d at 256-57, 432 N.W.2d at 920.

Talaska-Pikalek's testimony does not fall under the *Haseltine-Jensen* prohibitory umbrella. She did not testify that the cause of the victim's physical condition was sexual assault, which would be clearly inadmissible. Further, her testimony was not an impermissible expert opinion on the victim's veracity, but merely her expert opinion on whether the victim's physical condition at the time of her treatment was consistent with the victim's statement to her that her vagina had been

81

penetrated. *See State v. Muhammad,* 41 Wis. 2d 12, 25, 162 N.W.2d 567, 573 (1968) (holding admissible doctor's expert opinion "that the tear found on the complainant was consistent with her allegation of rape"); *see also State v. Elm,* 201 Wis. 2d 452, 457-61, 549 N.W.2d 471, 473-75 (Ct. App. 1996) (concluding expert opinion admissible where doctor testified that based on patient's history, and physical examination of child victim, "she was molested").[8] Accordingly, we conclude the trial court did not erroneously exercise its discretion in admitting the nurse's opinion testimony.

### III. SUMMARY.

In short, we conclude that trial court properly refused to suppress Ross's inculpatory statements to the police and properly exercised its discretion in admitting the nurse's opinion testimony. Consequently, the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

---

[8] Ross urges this court to "put to rest the balance of the opinion in *State v. Muhammad* as it relates to permissible use of expert medical testimony." This we will not do. While a portion of *Muhammad* concerning use of a victim's prior sexual history was later seemingly overruled by *Milenkovic v. State,* 86 Wis. 2d 272, 279, 272 N.W.2d 320, 323-24 (Ct. App. 1978), the remainder of the opinion remains good law that we invoke in reaching our conclusion about the admissibility of Talaska-Pikalek's testimony.