Sᴛᴀᴛᴇ of Wisconsin, Plaintiff-Respondent,

v.

Richard Allen Hᴀssᴇʟ, Defendant-Appellant.†

Court of Appeals

*No. 04–1824–CR. Submitted on briefs February 14, 2005.—Decided March 15, 2005.*

2005 WI App 80

(Also reported in 696 N.W.2d 270.)

† Petition to review denied 9-8-2005.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.   Richard Hassel appeals a judgment of conviction for arson and an order denying his postconviction motion for reconsideration of the court's earlier decision to deny his motion to suppress. Hassel had filed the suppression motion claiming that police had obtained his inculpatory statements in violation of his *Miranda* right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436 (1966). We conclude there was no *Miranda* violation, so the court properly denied the motions. Accordingly, we affirm the judgment and order.

### Background

¶ 2.   On May 7, 2002, around 7:30 p.m., sheriff's investigator David Hake and New Richmond police chief Mark Samelstad spoke to Hassel at his home about recent fires. Several times, Hassel told the officers "I can't talk to you." Hake testified that he did not consider this an invocation of Hassel's *Miranda* rights, since the parties mutually continued conversing. "He asked us questions and we asked him." Hake further testified that he did not read Hassel his *Miranda* rights since Hassel was not in custody at that time. At the conclusion of the conversation, Hake and Samelstad arrested Hassel, taking him to jail. Hake told him that they would be back to talk to him the next morning.

¶ 3. At 9 a.m. on May 8, Hake and Samelstad returned with special agent Michael Van Keuren from the Wisconsin Department of Justice to interview Hassel. The officers indicated they wanted to speak to Hassel about his chemical dependencies and his problem of starting fires. At 9:20 a.m., Hake read Hassel his *Miranda* rights, and Hassel signed an acknowledgement and waiver form. He also stated something to the effect of "I don't know if I should talk to you," but during the subsequent three-hour interview, he never asked to stop the questioning. During the interview, he made incriminating statements.

¶ 4. Hassel was charged with ten felonies: five counts of arson to a building, contrary to WIS. STAT. § 943.02(1)(a); one count of arson to property other than a building, contrary to WIS. STAT. § 943.03; and four counts of setting fire to land, contrary to WIS. STAT. § 26.14(8).[1]

¶ 5. Hassel filed a motion to suppress his incriminating statements, contending he had invoked his right to silence on May 7 and that this right was violated by the continued questioning on May 8. The trial court denied the motion. Hassel then entered a plea pursuant to an agreement with the State. In exchange for his no contest plea to the first count of arson to a building, the State dismissed and read in the remaining nine counts, along with two pending charges from Polk County, for purposes of sentencing and restitution. Hassel was convicted and sentenced to twenty years' initial confinement and thirty years' extended supervision.

¶ 6. Hassel filed a motion for reconsideration, asking the court to revisit his sentence and the suppres-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

sion motion. The court adjusted the sentence to reflect Hassel's eligibility for the Challenge Incarceration Program but otherwise denied the motion. Hassel appeals the portion of the order denying reconsideration of the suppression motion.

## Discussion

¶ 7. Whether Hassel's right to remain silent has been violated presents a question of constitutional fact, which presents a mixed question of fact and law. *State v. Ross*, 203 Wis. 2d 66, 79, 552 N.W.2d 428 (Ct. App. 1996). Findings of historical fact will be upheld unless clearly erroneous, and determinations of law will be reviewed independently. *See State v. Phillips*, 218 Wis. 2d 180, 189–90, 577 N.W.2d 794 (1998).

### Whether Hassel Invoked His Rights on May 7

¶ 8. Hassel contends he invoked his *Miranda* rights by saying "I can't talk to you" when police interrogated him at his home on May 7. We disagree.

¶ 9. It is true that police must cease questioning when *Miranda*'s right to remain silent—or right to counsel—is invoked. *See Ross*, 203 Wis. 2d at 74. However, "*Miranda* and its progeny are aimed at dispelling the compulsion inherent in custodial surroundings. . . . Thus, the *Miranda* safeguards apply only to custodial interrogations." *State v. Pheil*, 152 Wis. 2d 523, 530–31, 449 N.W.2d 858 (Ct. App. 1989); *see also State v. Armstrong*, 223 Wis. 2d 331, 344–45, 588 N.W.2d 606 (1999), and *State v. Mitchell*, 167 Wis. 2d 672, 686, 482 N.W.2d 364 (1992). The United States Supreme

Court has previously noted that it has "in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'...." *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991). Therefore, Hassel was not entitled to invoke *Miranda* during the May 7 interview.

¶ 10.   Indeed, Hassel has never argued he was in custody on May 7. Instead, he suggests we must apply the holding in *State v. Fencl*, 109 Wis. 2d 224, 325 N.W.2d 703 (1982). That case stated in part: "The Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation." *Id.* at 237. We determine, however, that *Fencl* does not apply as broadly as Hassel suggests.

¶ 11.   Fencl was suspected of first-degree murder and the police had several meetings with him. At the first meeting, he denied knowing anything about the victim. *Id.* at 225–26. During the second meeting, Fencl said he wanted to talk to his attorney but would get back to the detective. *Id.* at 226. Half an hour after that meeting, Fencl went to the police station and spoke very briefly with the investigator, who was called away. *Id.* Later that same day, Fencl again returned to the police station, this time with his attorney. Only the attorney, not Fencl, spoke to the investigators. *Id.* Fencl was given his *Miranda* rights, but was allowed to leave. He was arrested the next day. *Id.*

¶ 12.   During the trial, the State referred several times to Fencl's silence both before and after he had been given his *Miranda* rights. *Id.* Prior jurisprudence prohibited the State from affirmatively using at trial a defendant's silence during a custodial interrogation, *id.* at 233–34, but the court had never previously been called upon to consider whether the State could use

prearrest, pre-*Miranda* silence. *Id.* at 237. Ultimately, the court concluded in part:

> The state contends that, unless silence is compelled by arrest or a custodial interrogation, it is not protected by the Fifth Amendment. We disagree. The Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation. Any time an individual is questioned by the police, that individual is compelled to do one of two things—either speak or remain silent. If both a person's prearrest speech and silence may be used against that person, as the state suggests, that person has no choice that will prevent self-incrimination. This is a veritable "Catch-22." Thus the state's theory places an impermissible burden on the exercise of Fifth Amendment rights. We hold that a person is entitled to the protection of the Fifth Amendment even prior to arrest or a custodial interrogation.

*Id.* at 237–38.

■

¶ 13. Hassel now argues that the officers' disregard of his purported invocation of *Miranda* during his precustodial, prearrest discussion offends the Fifth Amendment in the same way as the State's affirmative use of the defendant's prearrest silence in *Fencl*. We disagree.

¶ 14. At the heart of the Fifth Amendment is the idea that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. As *Fencl* explains, when both silence and statements can be used against a defendant as evidence of guilt, the right against self-incrimination becomes impossible to invoke because anything the accused does is evidence for the State. *Fencl*, 109 Wis.

2d at 237. The State was therefore precluded from relying on Fencl's silence as prima facie proof of his guilt. *Id.* at 236–37.

¶ 15. What *Fencl* emphasizes, however, is the protection from *compelled* self-incrimination. *Id.* at 237. Hassel has not suggested the State used his recalcitrance as evidence of his guilt—the sort of compelled self-incrimination present in *Fencl.* Indeed, our jurisprudence tells us that a noncustodial interrogation normally fails to create circumstances that compel self-incrimination which is why *Miranda* does not apply in those situations. *See Pheil,* 152 Wis. 2d at 530–31. Ultimately, *Fencl* does not protect anticipatory invocation of the right to remain silent from further investigative inquiry. It simply prevents the State from using someone's prearrest, precustodial silence as proof of guilt. Therefore, *Fencl* does not inform on the immediate issue.

## Whether Hassel Invoked His Rights on May 8

¶ 16. Hassel made his inculpatory statements on May 8. He contends that either he invoked his right to remain silent after he was arrested or, alternatively, the police knew on May 7 he intended to invoke the right, so they failed to "scrupulously honor" this prior invocation on May 8. We disagree with both arguments.

¶ 17. Hassel first contends that he invoked his right to remain silent when, after he was advised of his *Miranda* rights, he told the officers "I don't know if I should speak to you." We disagree.

¶ 18. In *Davis v. United States,* 512 U.S. 452 (1994), the suspect had said, "Maybe I should talk to a lawyer." *Id.* at 455. In that case, the Court held such a

statement was insufficient to require police to stop the interrogation. *Id.* at 462. Our court extended the *Davis* "clear articulation rule" to the right to remain silent in *Ross*, 203 Wis. 2d at 70. *Ross* holds that when a request to remain silent is ambiguous, police need not endeavor to clarify the suspect's request. *Id.* at 78.

¶ 19. We conclude that Hassel's statement, "I don't know if I should speak to you," is ambiguous—and Hassel actually concedes as much—and not a clear invocation of the right. It does not indicate Hassel's desire to remain silent, only his uncertainty as to whether he should.

¶ 20. Alternatively, Hassel contends that the police failed to "scrupulously honor" his prior May 7 invocation of his right to remain silent. We have already held, however, that Hassel could not preemptively invoke that right because he was not subject to custodial interrogation. Therefore, there is no prior invocation with which the police should have been concerned.[2]

---

[2] Even if Hassel could and did invoke his right to remain silent on May 7, the police honored that invocation. Once a defendant invokes the right to remain silent, the State may again interrogate him after the invocation if the right is "scrupulously honored." *State v. Hartwig*, 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985) (citing *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)). The following factors apply: whether (1) the original interrogation was promptly terminated; (2) the interrogation resumed after the passage of significant time; (3) the suspect was given his complete *Miranda* warnings at the outset of the second interview; (4) different officers resumed the interrogation; and (5) the second interrogation was limited to a crime not the subject of earlier interrogation. *See Mosley*, 423 U.S. at 106–07. "The absence or presence, however, of the *Mosley* factors is not exclusively controlling and these factors do not establish a test which can be 'woodenly' applied." *Hartwig*, 123 Wis. 2d at 284–85 (citation omitted).

¶ 21. Hassel was not entitled to anticipatorily invoke the right to remain silent on May 7 because he was not in custody. Hassel also failed to unambiguously articulate his invocation of the right to remain silent on May 8—his statement was ambiguous. The trial court therefore correctly denied the suppression and reconsideration motions.

*By the Court.*—Judgment and order affirmed.

Assuming without deciding that "I can't talk to you" was sufficiently clear to invoke the right to remain silent, police did not promptly terminate the May 7 interview. However, the inculpatory statements the State utilized did not arise in that conversation. In light of the remaining *Mosley* factors and their flexibility, this failure is not fatal. More than twelve hours passed between Hassel's arrest and the resumption of the interrogation. In *Mosley*, just two hours was sufficient. *Mosley*, 423 U.S. at 107. Hassel was advised of his *Miranda* rights within twenty minutes of the start of the May 8 interview. While Hake and Samelstad were not new officers, Van Keuren was a different agent than Hassel had met on May 7. Under *Mosley*, the police scrupulously honored Hassel's May 7 invocation of his right to remain silent, assuming Hassel could make that invocation at all.