SHIRLEY S. ABRAHAMSON, C.J.
¶ 90. (dissenting).
"I don't want to talk about it." (Smith)
"Take me to my cell." (Cummings)
¶ 91. Miranda guides us in understanding a suspect's invocation during interrogation of the right to remain silent: "[I]f [a defendant] ... indicates in any
manner that he does not wish to be interrogated, the police may not question him."[1]
¶ 92. Recently, the United States Supreme Court adopted the Davis[2] objective "unequivocal invocation" test for gauging a defendant's invocation of the right to remain silent. See Berghuis v. Thompkins, 560 U.S. 370 (2010).
¶ 93. The defendants and the State agree that Davis (Thompkins governs the instant cases but express concern that the court of appeals has not followed these Supreme Court holdings.
*35 ¶ 94. Both defendant Cummings and the State agree, as do I, that under the Davis "unequivocal invocation" test, the determination of whether an invocation of a Miranda right is unequivocal uses an objective standard. Whether a defendant has unequivocally invoked a right is assessed by determining how a reasonable police officer would understand the suspect's statement in the circumstances.[3] Defendant Cummings and the State agree that certain language in State v. Ross, 203 Wis. 2d 66, 552 N.W.2d 428 (Ct. App. 1996), referring to the suspect's subjective intent, is problematic under Davis/Thompkins.
¶ 95. The State explicitly asks the court to disavow language in Ross referring to the suspect's intent, language that has been cited in other court of appeals decisions. The State's request is framed as follows:
The State agrees with Cummings that language in Ross referring to the suspect's subjective intent is problematic. As Cummings observes, the test in Davis (and Thompkins) is objective: whether a suspect has unequivocally invoked his or her rights under Miranda is "an objective inquiry that 'avoid[s] difficulties of proof and ... provide[s] guidance to officers' on how to proceed in the face of ambiguity." Thompkins, 560 U.S. at 381-82 (quoting Davis, 512 U.S. at 458-59). To the extent that Ross suggests that courts and police must consider a suspect's subjective intent, as well as his or her statements and non-verbal cues, in determining *36 whether an unequivocal invocation has been made, Ross is inconsistent with Davis and Thompkins. The State asks the court to address this issue in its opinion, and explicitly disavow language in Ross referring to the suspect's intent, which was also cited in [State v.] Markwardt, [2007 WI App 242,] 306 Wis. 2d 420, ¶ 28, [742 N.W.2d 546,] and [State v.] Hampton, [2010 WI App 169,] 330 Wis. 2d 531, ¶ 46[, 793 N.W.2d 901].[4]
¶ 96. The majority opinion relies on Ross and Markwardt,[5] citing the cases frequently. The majority opinion does not, however, clarify Ross in the manner requested by both the State and Cummings.
¶ 97. The majority opinion, dwelling on the suspect's subjective motives, seems to apply a subjective "unequivocal invocation test," contrary to the holdings of the United States Supreme Court in Davis and Thompkins. I think federal district court Judge Griesbach got it right in Saeger v. Avila, 930 F. Supp. 2d 1009 (E.D. Wis. 2013), overturning an unpublished court of appeals decision.[6]
¶ 98. The federal court stated that the Wisconsin court of appeals "found that while Saeger's actual words were clear, he did not really mean them." The Saeger court concluded that "if this reasoning [of the court of appeals] were accepted, then it is difficult to imagine a situation where a suspect could meaningfully invoke the right to remain silent no matter what words he used." Saeger, 930 F. Supp. 2d at 1015-16.
*37 ¶ 99. Saeger correctly stands for the proposition that a court should look to the words the suspect uses in the context in which they were spoken, but that a court cannot manufacture ambiguity "by examining a suspect's possible motive . . . ." Saeger, 930 F. Supp. 2d at 1019.
¶ 100. The majority opinion seems to assert that the defendants did not mean what they said.[7]
¶ 101. In addition to arguably employing the wrong test, the majority opinion finds equivocation where, in my opinion, none exists and ignores the plain meaning of the defendants' requests in both cases. The majority opinion's application of the "unequivocal invocation" test to the two instant cases, whether as a subjective or objective test, ignores the reality of colloquial speech.
¶ 102. In the end, I conclude that a reasonable person would understand that "I don't want to talk about this" and "take me to my cell" mean the conversation is at an end.
¶ 103. As the law currently stands, law enforcement officers are encouraged but not required to ask clarifying questions,[8] and courts are encouraged to resist creating ambiguity in straightforward statements. In both Smith and Cummings, had the officers viewed the statements at issue as unclear and asked *38 clarifying questions, appellate review in the court of appeals and in this court might have been avoided.[9]
¶ 104. Although neither the State nor the defendants challenge the use of the Davis/Thompkins rule, I do.
¶ 105. I commented on the shortcomings of the "unequivocal invocation" test in my dissent in State v. Subdiaz-Osorio in the context of invoking one's Miranda right to counsel[10] and in my dissent in State v. Wantland in the context of withdrawal of consent to a search.[11] These comments apply to the present cases relating to invocation of a suspect's Miranda right to remain silent.
¶ 106. Because it is so difficult to find a clear, discernable, bright line between equivocal and unequivocal statements, courts employ "selective literalism," sometimes viewing a suspect's language as unequivocal, other times requiring very clear language.[12]
¶ 107. As I wrote in my dissents in Subdiaz-Osorio and Wantland, the "unequivocal invocation" test invites equivocation on the part of courts and has led to inconsistent, subjective results in the case law.
*39 ¶ 108. Inconsistencies are glaringly apparent in courts' use of the "unequivocal invocation" test in the context of the right to counsel. Comparing statements that have been deemed "unequivocal" by a court with those that have been deemed "equivocal" reveals an unsettling arbitrariness. For instance, one court deemed "Can I call my lawyer?" equivocal, whereas another deemed "Can I have my lawyer present when [I tell you my story]?" unequivocal.[13]
¶ 109. I agree with Justice Sotomayor's dissent in the recent 5-4 Thompkins decision, which comments on the weaknesses of the "unequivocal invocation" test in evaluating a suspect's statements as follows:
The Court asserts in passing that treating ambiguous statements or acts as an invocation of the right to silence will only marginally serve Miranda's goals. Experience suggests the contrary. In the 16 years since [Davis v. United States, 512 U.S. 452, 461 (1994)] was decided, ample evidence has accrued that criminal suspects often use equivocal or colloquial language in attempting to invoke their right to silence. A number of lower courts that have (erroneously, in my view) imposed a clear-statement requirement for invocation of the right to silence have rejected as ambiguous an array of statements whose meaning might otherwise be thought plain. At a minimum, these decisions suggest that differentiating "clear" from "ambiguous" statements is often a subjective inquiry.[14]
*40 ¶ 110. Because the majority opinion fails to uphold the broad protection mandated by Miranda and undermines the core principle of protecting the defendants' Fifth Amendment right against compelled self-incrimination, I dissent.

 Miranda v. Arizona, 384 U.S. 436, 445 (1966) (emphasis added).

 Davis v. United States, 512 U.S. 452 (1994).

 In addressing the unequivocal invocation test of whether a suspect seeks to invoke his or her right to counsel, the Court explained: "Although a suspect need not 'speak with the discrimination of an Oxford don,'... he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459 (quoted source omitted).

 Brief of Plaintiff-Respondent and Supplemental Appendix at 12-13.

 State v. Markwardt, 2007 WI App 242, 306 Wis. 2d 420, 742 N.W.2d 546.

 State v. Saeger, No. 2009AP133-CR, unpublished slip op. (Wis. Ct. App. Aug. 11, 2010). Saeger was a habeas case.

 Majority op., ¶¶ 54, 58-59, 62 (speculating that Cummings was "fencing" with his interrogator and that Smith was professing his innocence).

 Davis, 512 U.S. at 461 ("Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.")

 The interrogating officer in Smith did not merely fail to ask clarifying questions; he erroneously stated, "I got a right to ask you about it," asserting his authority and undercutting the defendant's constitutional right to remain silent. Accord State v. Wantland, 2014 WI 58, ¶¶ 81-82, 355 Wis. 2d 135, 848 N.W.2d 810 (Abrahamson, C.J., dissenting) (concluding that an officer cannot cut off a defendant's opportunity to refuse to give consent to a search by erroneously asserting legal authority).

 State v. Subdiaz-Osorio, 2014 WI 87, ¶¶ _, 357 Wis. 2d 41, 849 N.W.2d 748 (Abrahamson, C.J., dissenting).

 State v. Wantland, 2014 WI 58, ¶¶ 84-91, 355 Wis. 2d 135, 848 N.W.2d 810 (Abrahamson, C.J., dissenting).

 Marcy Strauss, Understanding Davis v. United States, 40 Loyola L.A. L. Rev. 1011, 1062 (citing Peter M. Tiersma & Lawrence M. Solan, Cops and Robbers: Selective Literalism in American Criminal Law, 38 Law & Soc'y Rev. 229, 256 (2004)).

 Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001); Taylor v. State, 553 S.E.2d 598, 601-02 (Ga. 2001).
For a survey of statements that have and have not been deemed equivocal, see Strauss, supra note 12, at 1061-62.

 Berghuis v. Thompkins, 560 U.S. 370, 410-11 (2010) (Sotomayor, J., dissenting) (internal quotation marks, citation, and footnote omitted).