COURT OF APPEALS
DECISION
DATED AND FILED

November 8, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1874-CR**

Cir. Ct. No. 2019CF1710

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

COLLIN D. REIMER,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: JENNIFER DOROW, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Collin D. Reimer appeals from a judgment of the circuit court entered after his plea of no contest.  He contends the court erred when it denied his motion to suppress statements he made to law enforcement and evidence law enforcement found on his laptop, concluding Reimer voluntarily made the statements and voluntarily turned over and consented to the search of his laptop. He also challenges his sentence.  For the following reasons, we affirm.

## *Background*

¶2      After being charged with possession of child pornography in relation to images found on his laptop, Reimer brought a motion to suppress statements he made to two detectives at his residence and incriminating evidence found on his laptop.  Following the hearing on his motion, the circuit court found and ruled as follows.[1]

¶3      On November 27, 2019, acting on a cyber tip that then-nineteen-year-old Reimer may be in possession of child pornography, two plain-clothed armed detectives made contact at the home of Reimer's parents, where Reimer resided. Reimer's brother permitted the officers to enter the home; the detectives did not employ any force, threats or coercion to gain entry.

---

[1] Reimer and one of the detectives testified at the suppression hearing.  For his appeal, however, Reimer only provided the transcript of his testimony, arguments by counsel for the parties, and the circuit court's oral ruling; he did not provide the transcript of the detective's testimony.  An appellant has the responsibility to ensure the record is sufficient to address the issues presented on appeal, and where the appellant does not, like Reimer here, we assume missing sections of the record support the circuit court's ruling. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-7, 496 N.W.2d 226 (Ct. App. 1993).  Thus, we focus on the circuit court's findings, because even if they conflict with Reimer's testimony at the hearing, we have to assume they are supported by the detective's testimony.  We also accept the findings as correct because Reimer does not challenge them on appeal.

¶4     While the detectives waited downstairs, the brother went upstairs and informed Reimer of the detectives' presence and desire to speak with him. When Reimer came down to meet with them, the detectives were "upfront" in informing him they were investigating a cyber tip and wanted to search his "computer or devices that might still have this suspected child porn on it." Reimer had had some prior "exposure and experience with law enforcement on the very same issue that these detectives were investigating"—when he was fourteen years old, he had been "taken out of his home, to a police department where he was interviewed or interrogated by two female detectives … about very graphic images."

¶5     Reimer was very cooperative, and the "conversation" between him and the detectives was "very cordial." While at the home, one of the detectives asked Reimer if he had any computers, and Reimer retrieved his laptop from a backpack and provided it and the password to the detectives. Reimer also signed a "consent to search" form, giving the detectives written permission to search his computer and acknowledging he was giving his permission voluntarily and with no promises or threats made by the detectives.

¶6     Reimer cooperated with the detectives and "readily" permitted them to search his laptop "in part because he wanted to, and he didn't think he had anything to hide," because he "thought none of this stuff would be there, given the circumstances of when he apparently originally downloaded it and tried to get rid of it." When speaking with Reimer, the detectives did not raise their voices, never touched him or made any threats or promises, and did not place him in handcuffs or otherwise in custody. The detectives were at Reimer's residence for no more than twenty-five minutes.

¶7 The circuit court acknowledged that the detectives did "play on [Reimer's] emotions," but added that "[i]t's a lawful police tactic." The court found that nothing at the hearing conflicted with the written permission Reimer provided the detectives "other than a statement by him that he felt he could not do anything else." It recognized he "had an internal … pressure to cooperate," noting that "[h]e grew up with respect for law enforcement," but found that his "feeling" that he was compelled to cooperate was "a product more to do with maybe his own regret, remorse, maybe getting it off his chest." The court concluded that "none of those internal pressures amount to coercion and make his statements involuntary," "[w]e don't have … anything on this record to suggest that [the detectives] forced, that they coerced this consent out of Mr Reimer," and the consent he gave the detectives to search his laptop "was freely and voluntarily given."

¶8 Following the denial of his suppression motion, Reimer pled no contest to one count of possession of child pornography and was sentenced to three years of initial confinement followed by two years of extended supervision. Reimer appeals.

*Discussion*

¶9 Reimer contends his statements to the detectives were not voluntarily made and his consent for them to search his laptop was not voluntarily given. His statements were voluntarily made if they were "the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by … the State exceeded the defendant's ability to resist." *See State v. Vice*, 2021 WI 63, ¶29, 397 Wis. 2d 682, 961 N.W.2d 1 (citation omitted). The State must show by a preponderance of the evidence that Reimer made his

4

statements voluntarily. *See **State v. Moore***, 2015 WI 54, ¶55, 363 Wis. 2d 376, 864 N.W.2d 827. Reimer's consent for the detectives to search his laptop was voluntarily given if it "was given in the absence of duress or coercion, either express or implied." *See **State v. Floyd***, 2017 WI 78, ¶30, 377 Wis. 2d 394, 898 N.W.2d 560 (citation omitted). The State must show by clear and convincing evidence that Reimer's consent to search was voluntarily given. *See **id.***

¶10   "Voluntariness is evaluated in light of all the circumstances surrounding interrogation and decided under a totality of the circumstances, weighing the suspect's personal characteristics against the actions of the police." ***Moore***, 363 Wis. 2d 376, ¶56 (footnote omitted). "[T]o justify a finding of involuntariness, there must be some affirmative evidence" that improper police practices were employed. ***Id.*** We consider the length of the police engagement with the defendant, general conditions and circumstances, "whether any excessive physical or psychological pressure was used, and whether any inducements, threats, methods, or strategies were utilized" by the police. ***Id.***, ¶57 (citation omitted).

> "The question of voluntariness involves the application of constitutional principles to historical facts." We uphold a circuit court's findings of historical fact unless they are clearly erroneous. A finding of historical fact is not clearly erroneous unless "it is against the great weight and clear preponderance of the evidence." We independently review the application of constitutional principles to those facts.

***State v. Ward***, 2009 WI 60, ¶17, 318 Wis. 2d 301, 767 N.W.2d 236 (citations omitted).

¶11   In his appeal, Reimer specifically claims "his statements and surrender of his computer [were] non-voluntary" because he "felt … he had no choice but to cooperate with law enforcement." Although his arguments are not clear and he has insufficiently developed them, he appears to assert that his

statements and his consent for the detectives to search his laptop were involuntary because he was not read his *Miranda*[2] rights; he was separated from his siblings when the detectives spoke with him at his home; his parents were not contacted; the detectives "st[oo]d over him while questioning him"; and the detectives suggested to him that they were there "merely to have a conversation to 'clear' some things up," "the matter was not as serious as it was," and "he could help himself by cooperating." Reimer fails to persuade.

¶12    We first note that the detectives were not obligated to read Reimer his *Miranda* rights as he was not in custody when they engaged with him at his residence. *See* **State v. Kramer**, 2006 WI App 133, ¶9, 294 Wis. 2d 780, 720 N.W.2d 459 ("[T]he *Miranda* safeguards apply only to *custodial* interrogations." (citation omitted)). Moreover, when the detectives went over the "consent to search" form with Reimer, he was informed, as the form stated, "of [his] right[] to refuse to consent to [the] search, and … that evidence and/or contraband found as a result of such may be seized and used against [him] in a court of law." Additionally, Reimer acknowledged in his own testimony at the suppression hearing that when he had been previously interrogated, at age fourteen, regarding his possible possession of child pornography, he was read his *Miranda* rights. He also conceded he was otherwise familiar with those rights from crime shows. Reimer knew he had the right to choose not to speak with the detectives and not to consent to the search of his laptop; he just chose to cooperate instead.

¶13    We see no concerns with the detectives speaking with Reimer in a separate room from his siblings. The detectives were questioning him about an extremely sensitive and embarrassing topic—his possession of child pornography—

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

so having that discussion away from his siblings makes sense. Moreover, according to Reimer's own testimony, he was the one who directed the detectives to the specific living area where the discussion took place.

¶14 As to Reimer's parents not being contacted, we note that when considering the questioning of a fifteen-year-old for five and one-half hours, with the juvenile being with police for eleven hours, the *Moore* court stated that while it considered the lack of a parental presence during questioning "as a part of the totality of the circumstances surrounding Moore's confession," it "d[id] not change the outcome." *Moore*, 363 Wis. 2d 376, ¶¶62, 65 n.19. Here, Reimer was a nineteen-year-old adult, and the interaction with the detectives in his own home lasted no more than twenty-five minutes. We see no problem, and Reimer has failed to direct us to any law indicating there might be one.

¶15 In his briefing on appeal, Reimer also criticizes that the detectives "st[oo]d over him while questioning him." His actual testimony at the hearing, however, makes the situation sound less menacing—he testified that after he led the detectives to the living room area out of earshot of his brother and sister, he "was sitting on the couch, talking to them, and they were standing"; no imagery of the detectives standing "over him." We see nothing coercive about the circumstances as Reimer described them, nor has he directed us to case law indicating a legal concern here.

¶16 Reimer also complains that the detectives "suggest[ed] to [him] that their presence in the home was merely to have a conversation to 'clear' some things up," "the matter was not as serious as it was," and he could "help himself by cooperating." First, it is simply the truth that the detectives were there to "clear some things up." Before the detectives spoke with Reimer and searched his laptop,

they only had a "tip" that he may be in possession of child pornography—they could not have known whether or not such images would be found on any device in his possession or what statements he might make related to the same. Had Reimer allowed them to search his laptop and it did *not* contain child pornography that certainly would have "cleared things up" also—in Reimer's favor. Instead, the detectives were able to clear things up by concluding he was, in fact, in possession of child pornography, as the cyber tip suggested. Second, Reimer's first two complaints here are that the detectives minimized the situation. Our supreme court has confirmed, however, that the use of minimizing tactics by law enforcement is "commonly accept[ed]" by the courts. *See id.*, ¶64.

¶17    As to Reimer's statement that the detectives suggested he could "help himself by cooperating," he develops no argument that particular statements by the detectives amounted to an improper police tactic. The circuit court specifically found that the detectives made no promises or threats to Reimer, which finding is consistent with some of Reimer's own testimony at the hearing as well as the consent to search form he signed indicating the detectives made no promises or threats to him. He develops no challenge to the circuit court's finding in this regard.

¶18    According to Reimer's own testimony, the detectives certainly were not attempting to trick him; at his house, they frankly told him "they wanted to … check out any computer that I might have … just to make sure I wasn't in possession of [child pornography]." And, as Reimer further testified, he "said yes," allowing them to check his laptop because he thought he had nothing to hide, and he "just … thought it was the right thing to do." He thought he had nothing to hide because he believed he had previously deleted all of the child pornography. Reimer also testified he felt he "had" to talk to the officers because "that was just like the natural next step" and he thought he "had" to give them the laptop because "they asked if I

had any computers or stuff like that … to give them." But, as the circuit court recognized, Reimer's cooperation was due to his own "internal … pressure to cooperate," noting that he "grew up with respect for law enforcement" and that this pressure was "a product more to do with maybe his own regret, remorse, maybe getting it off his chest."

¶19 We see no improper tactics utilized by the detectives in the first instance, and we conclude that the circuit court did not err in determining that Reimer's statements to the detectives and his consent to search his laptop were voluntary in every respect. Thus, we also conclude the court did not err in denying Reimer's suppression motion.

¶20 As to his sentence, Reimer challenges it on two bases. At sentencing, the circuit court informed him that because his conviction was for the possession of child pornography, it did not have the discretion to impose a sentence with less than three years of initial confinement. On appeal, he claims the court did have said discretion, but he also concedes we have already decided this issue in a manner contrary to his position in *State v. Holcomb*, 2016 WI App 70, 371 Wis. 2d 647, 886 N.W.2d 100, and he further concedes that under *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997), we "may not overrule, modify or withdraw language from a previously published decision of the court of appeals." Because of his concessions, we discuss this no further.

¶21 As to Reimer's second sentencing challenge, he claims "the Circuit Court should have had the discretion to sentence [him] to less than the mandatory minimum" because, he claims, "at the time he knowingly possessed the images he was within 48 months of the child depicted in the images." Because Reimer

forfeited this issue due to failing to raise it before the circuit court and because he has insufficiently developed it on appeal, we do not consider it.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).