COURT OF APPEALS
DECISION
DATED AND FILED

May 19, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP801**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV229

IN COURT OF APPEALS
DISTRICT III

---

ALEXIS FECTEAU,

PETITIONER-RESPONDENT,

V.

KEVIN BOWMAN, JR.,

RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Oneida County: PATRICK F. O'MELIA, and MICHAEL H. BLOOM, Judges. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kevin Bowman appeals from a harassment injunction prohibiting him from contacting or making social media posts about his

former neighbor, Alexis Fecteau, for a period of four years and from an order denying reconsideration of the injunction.[1] Bowman contends that the circuit court lacked personal jurisdiction over him, the evidence was insufficient to support the injunction, and the court violated his due process rights by preventing him from presenting testimony and evidence. We conclude that Bowman waived his objection to jurisdiction by agreeing to proceed at the injunction hearing, there was sufficient evidence to support the injunction, and Bowman has not shown that his additional testimony or other evidence would have affected the outcome of the proceeding. Accordingly, we affirm.

## BACKGROUND

¶2 Fecteau filed a harassment injunction petition against Bowman on December 27, 2023. Pursuant to WIS. STAT. § 813.125(3)(c) (2023-24),[2] the circuit court adjourned an initially scheduled hearing because Fecteau had not served Bowman with the petition and notice of the hearing.

¶3 On the second hearing date, Fecteau informed the circuit court that a sheriff's deputy in Iron County, Michigan, where Bowman then lived, still had not served Bowman because the deputy had been on vacation. Bowman asked the court to dismiss the matter with prejudice based upon the lack of service. The court told Bowman: "We can take the issue up today regardless of the service … or we can put the matter off until an officer goes to your business or to

---

[1] The Honorable Patrick F. O'Melia entered the harassment injunction while serving as a reserve judge. The Honorable Michael H. Bloom entered the order denying reconsideration.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

2

your home and serves you." Bowman responded: "We can do it today, Your Honor. I'm fine with that."

¶4 The circuit court then proceeded with the hearing. Fecteau testified that she had lived in Eagle River, Wisconsin, since October 2021 and that she operated a pet grooming business from her home. Bowman had lived next door to Fecteau until a few months before Fecteau filed the injunction petition.

¶5 On June 6, 2023,[3] law enforcement responded to a report that Bowman had stopped his truck in front of Fecteau's house and had gotten into an altercation with Fecteau's fiancé, David Peterson (against whom Bowman subsequently sought his own injunction). Fecteau testified that Bowman had also sped past her house on that occasion, although that fact was not reflected in the police report. Shortly thereafter, Bowman posted on Facebook, which stated in relevant part:

> I got some real winners for neighbors. Lived in my rental for 4 years of peaceful times. These assholes move in, run into self[-]inflicted financial problems, and try to take it out on me.
>
>  …
>
> Last year, I paid him to mow my lawn (while I waited for parts for my mower to arrive) he didn't even have the courtesy to inform me his mower was broken. Just took payment and left it alone. Then whines out loud, as my wife drove by, because I didn't plow him out this winter. Apparently, it's my responsibility to buy a plow truck to plow HIS driveway. Not to mention, I borrowed him my generator, when power went out for 5 days, and he brought it back broken (no spark).

---

[3] Although Fecteau testified that the incident occurred on June 3, 2023, the police report stated that it occurred on June 6, 2023. Because the police report was a contemporaneously created document, we will accept June 6 as the more accurate date.

> Funny watching him fly around like a rag doll when he tried to match strength with me. Bean pole! Then his grotesque girlfriend tries her hand at insults. Calling me fat is useless!... I can always lose weight. She can't lose ugly or stupid!
>
> They are losers! Stay away from Pet Grooming by Lexi. They are disgusting!

¶6 Bowman moved out of state in October 2023. Fecteau testified that on December 17, 2023, Bowman returned to the neighborhood and drove past Fecteau's house at a slow pace, and he then slammed on the gas when she went outside, making a very loud noise. Fecteau claimed that Bowman drove past her house again on December 24, 2023. Fecteau asserted that Bowman was "purposely spooling his turbo in his diesel truck so [Fecteau would] know he's there."

¶7 On December 21, 2023, Bowman also made another post about Fecteau and Peterson on Facebook. It stated, "Anyone who is thinking of going to 'Pet Grooming by Lexi,' beware of what you're getting involved with! Personal experience, she's a nut! I'd go anywhere else or do it yourself. Also check recent reviews on [Y]ahoo. Her true colors are shining!" Bowman attached screenshots from CCAP to his post showing that Fecteau had been the defendant in several criminal cases and that she had been convicted of four drug charges over a decade earlier.

¶8 Fecteau also introduced a third Facebook post Bowman made on an unspecified date that reposted a meme photograph Bowman had first posted in December 2014. The photograph showed a woman with hair sticking out in all directions under the caption, "Maybe She's Born With It." The third post did not mention Fecteau by name, but it included a statement that the picture reminded Bowman of an old neighbor.

¶9      Bowman testified that his problems with his neighbors began with the lawn mowing dispute. Bowman claimed that on one occasion after that dispute, Peterson attacked his car in the street and threatened to break his jaw.[4] Bowman claimed that on other occasions, Fecteau took down a sign Bowman had placed on her yard asking drivers to slow down and Peterson pointed a gun at Bowman. Bowman informed the circuit court that he had a timeline, video evidence, and a whole list of police reports he had filed about Fecteau and Peterson "physically doing stuff" to him, but the court did not allow Bowman to introduce or testify about those things.

¶10     Bowman acknowledged making the two Facebook posts advising people not to use Fecteau's business. The posts were visible only to Bowman's friends—which did not include either Fecteau or Peterson, whom he had blocked. Bowman testified that he wanted to warn his friends to stay away from Fecteau and her business because he considered her "crazy" and "dangerous" based on his personal experience with her, and he did not want his friends to "end up in the same situation" that he had with her. Bowman said the post with the unflattering photograph was referring to a prior neighbor in Green Bay, not Fecteau.

¶11     Bowman testified that he drove past Fecteau's house on December 17, 2023, "at a decent pace" because he had friends who still lived on the same street.[5] Bowman said that Fecteau came out of her house, raised her

_____

[4] Bowman asserts in his brief that this was the June incident in front of Fecteau's house, but his trial testimony did not clearly state when the incident occurred.

[5] Although Bowman did not explicitly testify that he was driving to visit friends on December 17, 2023, that is a fair inference from his other testimony. It appears that the circuit court may have accepted that testimony because the court asked whether there were other routes Bowman could take to visit his friends without driving past Fecteau's house in the future.

middle finger, and screamed at him, after which Bowman "took off" before his vehicle could be attacked again. He said that incident was the one time that he drove quickly past Fecteau's house. Bowman claimed that it was his wife who drove by Fecteau's house on December 24, 2023, when she went to visit a friend on the same street. Bowman's wife was present in the courtroom to testify regarding both of the December drive-by incidents, but she was not allowed to testify.

¶12 Fecteau continuously interrupted Bowman's testimony, despite the circuit court admonishing her to stop over a dozen times. The court eventually cut off Bowman's testimony without asking whether he was finished.

¶13 The circuit court did not resolve the parties' disputes over whether Bowman had driven past Fecteau's house on June 6, 2023, at a fast pace; whether Bowman had driven past the house at a slow pace on December 17, 2023, before gunning his truck's engine; or whether it was Bowman's wife who drove past the house on December 24, 2023. The court concluded that the Facebook posts alone met the criteria for harassment because they adversely affected Fecteau's livelihood and served "no legitimate purpose." Bowman had previously advised the court that he had not himself used Fecteau's grooming service. The court issued an injunction requiring Bowman to avoid contact with Fecteau and to cease harassing her, including by "Internet Attacks."

¶14 Bowman moved for reconsideration. He alleged that: (1) the circuit court lacked personal jurisdiction over him; (2) the court denied him his due process right to present a defense; and (3) the injunction violated his First Amendment right to express his personal opinion of Fecteau and warn others about her based on his personal interactions with her.

6

¶15   The circuit court did not hold an evidentiary hearing on the reconsideration motion because it viewed the issues presented as being legal in nature. The court concluded that Bowman had waived any objection to personal jurisdiction by agreeing to proceed with the injunction hearing and that attempting to persuade people not to patronize another's business based upon personal animosity rather than knowledge of the business was not protected speech because it served no legitimate purpose. The court did not address Bowman's due process claim. Bowman now appeals the injunction and the order denying reconsideration.

## DISCUSSION

¶16   Bowman argues that the injunction petition should have been dismissed for lack of personal jurisdiction[6] based upon Fecteau's undisputed failure to serve the petition upon Bowman. As the circuit court properly explained, however, any objection to personal jurisdiction is waived if it is not raised in a responsive pleading or by motion. *See* WIS. STAT. § 802.06(8)(a). Bowman, therefore, waived his objection to personal jurisdiction when he informed the court that he was willing to proceed, effectively withdrawing his motion to dismiss for lack of personal jurisdiction.

¶17   Bowman asserts that he only agreed to proceed with the hearing after the circuit court misinformed him about his options. Specifically, Bowman contends that the court's statement that the matter could be put off until an officer could serve Bowman at his home or business conflicted with WIS. STAT.

---

[6] Bowman also mentions a loss of competency, but that would have occurred only if the hearing had *not* proceeded.

§ 813.125(3)(c). We construe this as an argument that Bowman's waiver of personal jurisdiction was not knowingly made. We are not persuaded that the court actually misinformed Bowman, however.

¶18 It is true that WIS. STAT. § 813.125(3)(c) allows only one extension of the time to hold an injunction hearing based upon a lack of service. Therefore, if Bowman had not effectively withdrawn his motion to dismiss the injunction petition, the court would have had to dismiss the injunction petition for lack of personal jurisdiction.

¶19 The dismissal of an action for lack of personal jurisdiction is ordinarily without prejudice, however, because it occurs before the merits of the action have been addressed. *Giese v. Giese*, 43 Wis. 2d 456, 464, 168 N.W.2d 832 (1969). Dismissal with prejudice prior to the adjudication on the merits is a drastic sanction that generally would be appropriate only where there was misconduct or inexcusable neglect. *Haselow v. Gauthier*, 212 Wis. 2d 580, 591, 569 N.W.2d 97 (Ct. App. 1997). Here, Fecteau's failure to serve Bowman before the second hearing date was the result of a deputy's vacation, not any misconduct by Fecteau. It follows then that if the circuit court had dismissed this action, the dismissal would have been without prejudice, and Fecteau would have been free to refile her injunction petition. In that context, the court's statement that the matter could be put off until an officer could serve Bowman was an accurate statement of what would happen if the court dismissed the action and Fecteau refiled it. We conclude that the court had personal jurisdiction over Bowman.

¶20 Bowman next challenges the sufficiency of the evidence to support the injunction. A circuit court may grant a harassment injunction if there are "reasonable grounds to believe that the respondent [to an injunction petition] has

engaged in harassment with intent to harass or intimidate the petitioner." WIS. STAT. § 813.125(4)(a)3. The injunction statute defines "harassment" as "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." Sec. 813.125(1)(am)4.b. Case law further adopts common dictionary definitions that "harass" means "to worry and impede by repeated attacks, to vex, trouble or annoy continually or chronically, to plague, bedevil or badger," while "intimidate" means "to make timid or fearful." *Bachowski v. Salamone*, 139 Wis. 2d 397, 407, 407 N.W.2d 533 (1987) (citation omitted).

¶21 The analogous criminal harassment statute defines a "[c]ourse of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." WIS. STAT. § 947.013(1)(a); *Welytok v. Ziolkowski*, 2008 WI App 67, ¶25, 312 Wis. 2d 435, 752 N.W.2d 359 (applying the definition in § 947.013(1)(a) to the predecessor injunction statute). A course of conduct or repetitive acts that are intended, even in part, to harass or intimidate do not serve a legitimate purpose. *Board of Regents-UW Sys. v. Decker*, 2014 WI 68, ¶38, 355 Wis. 2d 800, 850 N.W.2d 112.

¶22 We will uphold the circuit court's findings of fact as to what occurred so long as they are not clearly erroneous, but we will independently determine whether those facts establish reasonable grounds for an injunction. *Welytok*, 312 Wis. 2d 435, ¶23. The court must make a determination as to whether conduct served a legitimate purpose based upon the actor's intent at the time of the conduct. *Id.*, ¶30. Intent is a fact to be inferred from a person's acts and statements, taking into account the surrounding circumstances. *Id.*, ¶26. If more than one reasonable inference about intent may be drawn from the evidence, we must accept the inference drawn by the circuit court. *Id.*, ¶27. Once grounds

have been established, the decision whether to grant an injunction lies within the court's discretion. *Id.*, ¶24. We will independently consider, however, whether an injunction that is based upon speech complies with the First Amendment. *Kindschy v. Aish*, 2024 WI 27, ¶9, 412 Wis. 2d 319, 8 N.W.3d 1.

¶23 Here, Bowman contends there are no reasonable grounds to believe that he engaged in harassment with the intent to harass or intimidate Fecteau because his posts were placed on a Facebook account to which Fecteau did not have access and were not "directed" toward her. Bowman cites an outdated version of Black's Law Dictionary for the proposition that harassment must be "directed at a specific person." *Harassment*, BLACK'S LAW DICTIONARY (10th ed. 2014). We note that the "directed" language in the cited definition appears to be based upon the federal harassment injunction statute. *See* 18 U.S.C. § 1514(d)(1). As discussed above, however, the definition of harassment adopted by the Wisconsin statute and case law does not include a provision that harassment must be "directed" at a person.

¶24 We agree that whether Bowman could anticipate that Fecteau would see his posts is relevant to a determination of his intent. That fact alone is not dispositive, however. Based upon all the circumstances, including the timing of the posts shortly following incidents between the parties, the circuit court could reasonably draw two inferences about Bowman's intent: (1) that he wanted to warn his friends about Fecteau out of concern that they might have negative interactions with her (as Bowman claimed); or (2) that he wanted to harm Fecteau economically out of spite because he was angry with her (as Fecteau claimed). The posts would serve a legitimate purpose if motivated by the first intent but not the second. Because the circuit court was in the best position to observe the parties and judge their relative credibility, we accept the court's determination that

10

Bowman's posts served no legitimate purpose, along with its implicit finding that Bowman's intent was to economically harm Fecteau because he was angry with her.

¶25    Bowman points out that Fecteau did not present any evidence showing that she actually suffered any loss of business.  However, the statute does not require Fecteau to show that she sustained damages in order to prove harassment.  The mere attempt to harm Fecteau's business would be sufficiently worrisome or vexing to constitute harassment when done for no legitimate purpose.[7]  *See Welytok*, 312 Wis. 2d 435, ¶¶16, 31 (explaining that a course of conduct that included disseminating true negative information about a competing attorney's past disciplinary proceeding formed part of the valid basis for a harassment determination when motivated by a desire for revenge rather than consumer protection); *cf. NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909-11 (1982) (holding that nonviolent boycott activity, including urging others to join in a boycott, is constitutionally protected when done for the legitimate purpose of bringing about political or social change).  We conclude that the evidence was sufficient to provide grounds for the injunction.

¶26    Bowman's final argument on appeal is that the circuit court violated his due process rights by the manner in which it conducted the injunction hearing.  Specifically, Bowman complains that the court refused to accept his timeline,

---

[7] We agree with Bowman that the circuit court's suggestion that it would have been okay for Bowman to make the same boycott suggestions in telephone calls to his friends rather than by Facebook posts improperly drew a distinction between oral and written communication that does not exist.  However, the court made that erroneous statement as part of a hypothetical.  It does not affect the actual factual basis for the court's decision.

video, exhibits, and other testimony and that it failed to control Fecteau's repeated interruptions, which left Bowman's presentation in "disarray."

¶27 We will assume, for the sake of argument, that the circuit court violated Bowman's due process rights by refusing to allow Bowman to present at least some of his materials and additional testimony. A due process violation is subject to the harmless error doctrine, however. *State v. Kramer*, 2006 WI App 133, ¶26, 294 Wis. 2d 780, 720 N.W.2d 459. Under the harmless error doctrine, this court will not reverse a judgment based upon "error as to any matter of … procedure" unless "after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial." WIS. STAT. § 805.18(2). This court will independently determine as a question of law whether an error is harmless. *State v. Beamon*, 2011 WI App 131, ¶7, 336 Wis. 2d 438, 804 N.W.2d 706.

¶28 Bowman did not present either the circuit court on his motion for reconsideration or this court with an offer of proof explaining exactly what his timeline, video, or police reports would have shown, much less has he explained how they would have affected the circuit court's determination that there were grounds for an injunction. We therefore cannot conclude that Bowman's substantial rights were affected based upon his claimed inability to present this additional evidence.

¶29 As to Bowman's wife's proposed testimony, we agree that the testimony had the potential to undermine Fecteau's allegation that Bowman was deliberately revving his engine while driving past Fecteau's house. However, in ordering the injunction, the circuit court did not make or rely upon any finding that

Bowman had been deliberately revving his engine while driving past Fecteau's house. Rather, the court based its determination that Bowman had harassed Fecteau upon those portions of Bowman's Facebook posts in which he urged his friends not to utilize her business.

¶30 We have already determined that repeatedly urging people not to patronize Fecteau's business, for no legitimate reason, was itself sufficient to support the issuance of the injunction. Because Bowman has not shown how he was prejudiced by the lack of any of the evidence that he contends he should have been allowed to present, we conclude that any error in excluding that evidence was harmless.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.